Your Honor, my name is Rachel Sandberg from Fenwick & West. On behalf of Petitioner Angelica Martinez, I'm here with Tanya Herrera. We'd like to reserve three minutes for rebuttal. We understand from the court's order that the party should be prepared to discuss this court's decision in Medina Morales and the 7th Circuit's opinion in Benzler. Let's repeat our order to us. Why don't you start talking? Sure. You're not 20 seconds into your argument. You haven't said anything. We believe that Medina Morales is squarely on point in terms of favoring a finding of jurisdiction here. As a preliminary matter, the I.J. failed to comply with its own regulations, which is contrary to law and therefore subject to review. Even if the I.J. had complied with its regulations, the denial of Ms. Martinez's request for continuance was an abuse of discretion, and the I.J.'s authority to grant or deny a continuance derived solely from a regulation promulgated by the Attorney General and not from a statute specified in Subchapter 2 of Chapter 12. What's the basis of a relief? Let's assume that there was an abuse of discretion denying the continuance. What's the basis of a relief? 245, 203B. What are you relying on? The petitioner in her pro se brief relied on 203B, and that only requires 7 years. The I.J. said she had not been here 10 years, so she couldn't get relief, and I'm not too sure what he was relying on. So what do you say her basis for relief? Why is she eligible for relief? The petitioner could have made an application to adjust her status through INA Section 245. My colleague, Ms. Herrera, is prepared to discuss the merits of Ms. Martinez's appeal, but if the Court has any questions about jurisdiction — 245 doesn't apply, as I understand it, because it only applies to evidence who were inspected, admitted, or paroled in the United States. She came in illegally. I don't see where 245 applies unless I've missed something. You're splitting argument? You're splitting 10 minutes of argument? I'm sorry? You're splitting your argument? Yes. I'm happy to address any questions on jurisdiction or if the Court wants to — Let's hear from counsel. Yeah, because we need to get to the merits. Okay. Tell me how 245 applies. Well, she was — the petitioner was apparently eligible to apply for an adjustment of status through her husband, But on what basis in the law? That's the problem. Oh, pursuant to 245. 245 does not apply to people unless they were inspected, admitted, and paroled in the United States. She came in illegally. It doesn't apply to her, I don't think. That's the way I read it. Well, my understanding, and certainly the government hasn't challenged this, is that she could apply for an adjustment of status through her husband, and she has, in fact, made that application, which is pending. There's no visa available. How can she apply for an adjustment of status? He's not a citizen, and unlike a situation where a citizen's spouse files an adjustment of status petition, I mean, this one was adjudicated, the marriage was on bona fide, and now she's got a waiting period. There's no visa. There's nothing to adjust to because there's no visa available for her to change her status. So, you know, it all would have worked fine if Mr. Amador had just applied for citizenship and become a citizen when he became eligible, but he didn't. He's a resident alien, so how can he change his status? Well, she can — my understanding based on the regulation is that, and certainly the immigration judge didn't dispute that. I think it was agreed below that she could apply for an adjustment of status through her husband, who is a legal permanent resident. However, that it would take some time for that process to complete itself. I wonder if I'm misremembering the facts. She applied for cancellation of removal. Is that right? Well, no. She was — she didn't apply for cancellation of removal. She sought a continuance in order to adjust her — to apply for an adjustment of status through her husband. I understood that the IJ ruled that she would be ineligible for cancellation of removal. Right, based on not having 10 years. And the basis for cancellation of removal would be what? She did seek cancellation of removal, didn't she? I believe that she had been erroneously advised by her counsel below that she could qualify with only seven years, and they were not aware of the — Let me back up. Was she trying to get cancellation of removal from the IJ? She was trying to get an opportunity to adjust her status from the IJ. Adjustment of status and cancellation of removal are two different things. Are — Are two different things. Yes. Was she trying to pursue the remedy of cancellation of removal? No, I don't believe so, sir. Then how did the 10 years become relevant? I don't believe it was, sir. I think that it was a misjudgment by counsel below. No, it was the IJ that mentioned the 10 years in its decision. The IJ says she's not eligible. She doesn't have 10 years, so she's not eligible for that. Yes. And then turned to the question of whether or not she could get adjustment of status based on an immediate relative petition, and he said, first of all, none has been filed. And second of all, even if it were filed, which I guess now it has been, under 8 U.S.C. 1255-I-2B, she's not entitled to immediate. You can only get adjustment if you have an immediate visa available, and that only happens if you are married to a petitioning spouse that's a U.S. citizen. Well, with respect, sir, I don't believe that the IJ actually went through all of that thought process. I believe what she said merely was that she recognized on the record that Ms. Martinez was married to a legal permanent resident. She then observed that no petition on Form I-130 had yet been made, and she then refused to continue the hearing to allow such an application to be made. Well, whether the IJ laid it out as carefully as you'd like, the fact of the matter is had the IJ granted continuance, it would have done no good. We now know that Mr. Amador has filed a petition. It's been granted. Am I mistaken about that? Yes. Okay. Does that result in issuance of a visa that would allow for adjustment of status? Well, the application is still pending. No, it's been granted. Yes. The application has been granted, and the marriage has been, that's what I understand the record to be. Well, that's correct, but, you know, it's not the case. The petition, the immediate relative petition was granted. The bonafides of the marriage has been certified, right? Do you know why she doesn't have a visa right now? Well, because it's going to take years for the process to make its way through. Are you familiar with 8 U.S.C. 1255 I2B, which requires that a visa be immediately available before you can adjust status? Well, that is the case, Your Honor. However, that's not what the regulation required. If you were to go back and say, okay, Madam IJ, go back and reconsider your decision in light of, you know, because you didn't lay out all the factors, she would say, okay, now we lay out all the factors. And the fact of the matter is there's nothing for which I can grant a continuance because there's no immediate visa available. That's where you're stuck. Well, with respect, Judge Kuczynski, we disagree because, in fact, the regulation requires that the alien only be apparently eligible to apply for relief, and there's no dispute. I don't believe, certainly the government hasn't disputed that she was apparently eligible to apply. Okay, so how much of a continuance would you ask for? Well, a reasonable continuance to allow her to make her application. And then we submit if she had appeared before the IJ again with the application pending and now granted, as you've pointed out, then the IJ's exercise of discretion on the continuance applying the various factors would have been different. Well, let's say it goes back to the IJ now, and she has a immediate, you know, the petition has been granted, has been filed, has been granted. Yes. What is the IJ to do with that? Well, in that — You can't adjust the status, right? No, at that point — Because there's no visa available. That's correct. And so what is the IJ to do at this point? At that point, the IJ would exercise her discretion applying the various factors and considering whether or not Ms. Martinez had been unreasonable, and there's no suggestion that she has been. Just get to the end of the sentence. She would exercise her discretion to consider whether or not to grant a further continuance. For how long? Seven years? Well, the case has been before the IJ already. Ms. Martinez has been in removal proceedings for six years, so — The IJ has to grant a continuance for as long as it takes for her to reach the end of the line on her priority date. Provided that the — So this case, the IJ has a legal duty to put this case on hold for her to get to the front of the line according to priority date. Is that your position? My position is she had a legal duty to — Is that your position? Is your position what I just stated, or is it something else? It's something else. She had a legal duty to put the — to continue the case in the first instance to allow Ms. Martinez to submit her application, as she ultimately did, notwithstanding the fact she wasn't given such an opportunity, which would have been required under the regulation, as you yourself wrote, in Moran v. Enriquez. But, you know, I didn't — I didn't ask you that question. I asked you the question is what happens if you win here and the case goes back? So giving me an answer in terms of what the IJ should have done in the first place doesn't answer my question. Let me ask my question one more time, okay, and try to follow — try to listen to the question. If you can't answer it, that's okay. Just say I don't know the answer. Okay. I can file a supplement, you know, something like that. But try to answer the question I'm actually asking. Let's say we say, okay, there was some use of discretion. This is now going to go back to the IJ to give her a chance to exercise discretion yet again, okay? What would you — I assume you would then ask the IJ to exercise discretion to grant a continuance, okay? My question is how long? For how long a continuance do you think the IJ is required to grant your client? Is it until she gets to the front of the line in terms of her priority date? Well, yes, Your Honor, provided that she hasn't acted unreasonably and — Your position is that there's a legal duty by the IJ to put this case on hold for your client to come to the end of the line as far as her priority date is concerned. So if it's five years, if it's six years, if it's seven years, that's what it takes. My position is that at that point, the judge would have a legal duty to apply the factors and bears to exercise her discretion, whether to grant a further continuance. And we submit that even if it was five years, it would constitute no inconvenience to the Immigration Court because there is no necessity to have Ms. Martinez come in every six months or a year to see what the status of her application is. Her counsel could easily send in a periodic written report. And provided she hasn't acted unreasonably, yes, then I think that that should be the IJ's exercise of discretion. But she would have an obligation to apply the bears factors. And essentially what you're saying is that by failing to do it in the first place, that's the abuse of discretion. That by failing to put the case on hold, that's abuse of discretion because she didn't do that in the first place. The first continuance was contrary. Failure to give the first continuance was contrary to law because the regulation contemplates that there will be at least one continuance. You didn't raise the regulation in the petition to the BIA, did you? Well, we did raise the fact that she had not been advised to have no. We did raise the fact that she had not gotten, she requested and not received a continuance. Well, I keep asking a question and you keep answering a different question. Why don't you try answering my question? You didn't raise the regulation in the petition for review before the BIA. There's no mention of the regulation. Ms. Martinez did not specify that regulation. However, the regulation includes the opportunity to make the application. Why do you think she hasn't waived that claim by having failed to raise it before the BIA? Because the Ninth Circuit precedent doesn't require that the alien use exact legalese in exhausting its administrative remedies. There's no mention of the regulation at all. It's not a question of not using legalese. There's no reliance whatsoever on the regulation. Well, we're arguing that the regulation required two things, advice and a continuance. And she definitely raised the issue of the continuance. So to that extent, the regulation is exhausted. Moreover, I believe there's authority that she isn't required to exhaust with respect to rights that she hasn't been advised on. Did she apply for special rule cancellation under NACARA? Her husband did. And she was erroneously advised below that she might be eligible for some form of derivative relief through her husband. There's no council claim here that we have ineffective assistance to council. We're just on the merits here, right? That's correct. We don't believe, unfortunately, that the assistance below rose to that level. Is she eligible for special relief cancellation, special rule cancellation? Under NACARA? Yes. We do not believe so. Because? Because she would herself have to be a Nicaraguan national, too. Okay. We'll hear from the government. Okay. Thank you. Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. Let me take a moment and see if I can help the Court through a couple of the questions that were asked a moment ago. Judge Burnett, you were asking about whether or not a person was eligible to just status if they had entered illegally, as Ms. Martinez did. The answer is the Life Act amendments in 2000 apparently changed that, and my understanding is that the person who entered illegally is now eligible to. And which act? I didn't quite hear you. It's the Life Act amendments. It was the Life Act in 2000, and then there were Life Act amendments in December of 2000. And the Life Act amendments specifically authorized for people to not have to exit the United States, even though they had entered illegally. Okay. So then 245 would apply? I believe so, yes, Your Honor. With respect to the process of, this answers a couple of questions. Ms. Martinez's husband was a Nicaraguan national. She's Mexican national. He was eligible to adjust his status under NICARA. He adjusted his status to LPR, which made him eligible to petition on her behalf as an immediate relative to seek an I-130 immediate relative visa on her behalf as soon as he adjusted his status to that of a lawful permanent resident. He didn't have to be a citizen to do that. He became a lawful permanent resident in May of the previous year before the hearing, and 11 months later he had still not filed an I-130 petition. So he had not been adjusted 11 years earlier, so he was not even eligible for citizenship. He was not eligible for citizenship. That is correct. I have the impression that he got adjusted. He was adjusted to temporary resident status back in the 90s at some point, but he didn't adjust his status. Oh, he was not permanent resident status. He became a lawful permanent resident just in May of the year prior to the hearing, 11 months prior to the hearing. But in any event, he couldn't file a K petition or whatever they filed for him. That's right. Because she's not a citizen. That's right. And at the point when an I-130 petition is filed, she then becomes eligible to file a simultaneous application under 245 to adjust her status. But not until her husband is qualified. Her husband first has to be qualified and her husband first has to file. It is not for her to file an I-130 petition, and she is not eligible to file a petition under 245 until her husband first files the I-130 petition. But they can be filed simultaneously. If her husband had been in the immigration court with an I-130 petition in his hand and she had had the adjustment of status application in her hand, the immigration judge could have accepted those as a matter of discretion and timeliness and so on, could have accepted them simultaneously, and would have had to have weighed that in his decision whether or not to get them filed. But the IJ could equally well have said, okay, I'll grant a continuance to give the husband a chance to go out and do that. The problem in this case is, one, he hadn't done it in 11 months, in spite of several other continuances that had taken place during that time. And there had been, frankly, 14 continuances in this case. It took five years for the government to get him into court, though. Yes. I mean, there's been a delay all around on this one. Right. And there's all kinds of interesting aspects in this case. Were there other continuances granted for purpose of giving him a chance to file this? No. They never once mentioned the concept of adjustment of status. So it's not like they got time to do this and he didn't do it. There was a continuance six months before because the attorney had a doctor's appointment. Right. But that was during the period when they could have filed that. So the question of having the husband file a 130 didn't arise until this hearing. Literally the day of the hearing. And the IJ could have said, okay, we'll grant another continuance. We'll grant continuances for all sorts of reasons. We'll grant a continuance for this other reason, which is to let the husband go file on I-30 and give her a chance to file that. Honestly, if there had been any evidence, if the husband had been there and had testified that he was prepared to file it immediately, I don't know what the IJ would have done. There isn't any evidence in the record that that, in fact, was the case. What we do have is the attorney and Ms. Martinez walking into the hearing on the day of the hearing asking for a continuance to permit this. Again, you're doing the same thing opposing counsel. You're answering questions I didn't ask and not answering the questions I did ask. The question is, she could have done it. Absolutely. Okay. Now, what you wanted to say, it was an abuse of discretion on her not to do it, but there was no impediment. It would have been nothing illegal for her to say, you know, the husband isn't here, but, look, I understand that there is a husband. I understand there are seven children involved. It is conceivable. You know, I've granted continuance for all sorts of motives, having to do with the convenience of the court and convenience of counsel. It would be, you know, I exercise my discretion to, you know, give her a couple of months or six weeks or something to go and try this out. Your Honor, I'm not prepared to say. It would not have been an abuse of discretion for her to do that. It would not have been unlawful for her to do that. I can't say. I don't know of any law that says that, but presumably the INS could have challenged that and said that that was an abuse of discretion to grant the continuance. I don't think that that would be the case, but you are correct. It appears on the record, and I don't believe. So you're saying I don't know? I can't tell you that it wouldn't be an abuse of discretion for her to grant a continuance under those circumstances. Because there isn't any law. And why can't you tell me that? If she can grant a continuance because counsel has a doctor's appointment, why isn't, and that's a valid reason, and because, you know, there are various other reasons that she didn't grant a continuance, what leads us to believe that this would have been an abuse of discretion? All I'm telling you, Your Honor, is I don't know of any law that says that this is or that that would or would not be an abuse of discretion for the IJ to grant a continuance. I don't believe it would personally. But I can't speak for the agency or the IJ under the circumstances because that's not developed in this record, and I'm not aware of any law that speaks to it. All right. Let me put the question differently because I don't know why you're being… I would grant the continuance, Your Honor. No, the question is, is there anything on this record that indicates to you that you're aware of that indicates it would have been an abuse of discretion for her to grant a continuance for this purpose? No. There is nothing here that suggests… Actually, you could have said this after two minutes. Your Honor. So the IJ could have done it, and if she had done this and had then… they had gone out and tried to do this, I gather they would have succeeded because we know they did succeed. Eventually the I-30 was filed, and the marriage has now been adjudicated to be bona fide. So we know this is a woman who has a bona fide marriage to a man who has been granted permanent resident status in the United States and has seven children and seven children who are U.S. citizens, right? I'm not sure about the number and I'm not sure about the U.S. citizenship, but she does have several children and stepchildren who are U.S. citizens. You are correct. Yes, she has some. Yes. Let me ask you a question. The reason given by the IJ for the denial of the continuance was what? The IJ didn't get into a great deal of depth in the reasoning for the denial, but the specific reasoning that the IJ put forward was that she wasn't eligible for the relief that she was asserting in the first place, given that there hadn't been this preliminary event that wasn't even within her control, and second, that that really, the approval of an I-130 petition, even after it's been filed, is virtually indefinite, but the approval of an I-130 petition that hasn't been filed yet and is therefore also an indefinite issue further extends the kind of indefinite nature of the continuance that was being requested. Am I recalling correctly that the IJ ruled that because she didn't have the ten years of continuous residence to be eligible for cancellation and removal, that that's why the continuance was going to be denied? No. There were, she had applied for two separate forms of relief. One was, well, actually the only one she had actually submitted an application for was cancellation of removal. So the application that the IJ had in front of him that he either had to grant or deny was the cancellation application. So he had to rule on that. Okay, and then, it's she, I think, it's Judge Weiss. Yes, I'm sorry. She ruled, well, you don't have ten years of continuous residence, so you can't, you wouldn't qualify for cancellation and removal anyway. That's right. I don't need to hear evidence on it. You haven't got ten years based on your own admission. Let's move on, is how she disposed of cancellation. The reason that the seven-year business came up is she originally cited a case in front of the immigration judge called Estrella saying that it was asserting that she, because she had passed seven years prior to the 1997 statute, 1996 statute, that she might be eligible for suspension. Here's what I'm trying to figure out. If the reasons given for the denial of the continuance were legally correct reasons, or if they were, you know, she had some kind of misunderstanding of what was going on. They were absolutely correct. The reasons that she cited were absolutely correct. She didn't go through the entire litany of reasons. I think at some other point in the record, I guess the DHS that mentions that there had been eight continuances in the case, in addition to six other postponements of various other kinds since 1997. So I think that was clearly a feature in the mind of the immigration judge, in considering an additional indefinite continuance of time. What's the significance of 8 CFR 1240.11 that requires the ITA both to inform Martinez of her apparent eligibility for relief and afford her an opportunity to apply? Now, it's recognized that she possibly had some sort of relief through her husband, but nothing had been done. So what is the relevance, then, of 1240.11 that says she has to be given an opportunity to apply? None whatsoever, Your Honor. If you read the previous sentence to the one that Petitioner quotes, it says once an application for adjustment of status has been filed, if there are other barriers to her admissibility under 212 and that she thinks she's able to apply for, she needs to do that, and the immigration judge is obliged to explain those things to her and give her a chance to apply for waivers to grounds of admissibility that would otherwise bar her from adjustment of status. There is no application for adjustment of status in this case, and the preliminaries for that weren't in place. So 1240.11, 8 CFR 1240.11. It's a question of the abuse of discretion on the continuance, because we've already disposed of the removal issue. She says, but I want to apply for adjustment of status on behalf of my husband. Nothing's been applied. He's never filed the I-30. And so that's the basis for the abuse or non-abuse of discretion. I would also suggest that she came into the immigration court, as you can read, they talk about restating her motion for a continuance. Yeah, I couldn't understand it. Even prior to going on the record, she asked for a continuance. Prior to going on to the record, she apparently asked for the continuance to seek adjustment of status. So it was clear when the record opened up, when the hearing opened that day, the immigration judge already knew that she was fully aware of the possibilities for her to seek adjustment of status. There was no reason for him to inform her on the record of what her rights were associated with that. He merely had to go through it on the record to make sure that it was clear on the record that she was not eligible for what she was asking for. The counsel stated he wants to adjust her status on the basis of her, I think he said of her husband, so it's wide open, whatever that basis may be. That's right. So the immigration judge specifically said, but wait a minute, there hasn't been an I-130 filed. Therefore, you're not even eligible to submit such an application. Well, you can't possibly be eligible based on somebody else without the I-130, right? There's no other way. That's right. The I-130 is his to file, not hers. He could have filed an I-130 then, according to your brief, if the timing is correct. He became an LPR on May 15, 2001, so he could have applied for the I-130 the day after that. That's correct, Your Honor. But it was not applied until 11 months after the hearing on February 2003, is it? That's correct. The hearing, I think, happened 11 months later, and then it wasn't done until 11 months after the hearing. That's correct. So essentially two years after he was eligible. Your brief says February 2003. It's 10 months after the immigration judge issued the decision. That's right. Which is 11 months after the hearing, which is 11 months after he became eligible. So not only wasn't it filed before the hearing, it wasn't filed until 10 months after. How do we look at all that relative to the abuse of discretion? Well, obviously, the government's position is you don't even have the authority to look at the abuse of discretion. But under our case law, you're wrong about that. Your case law doesn't specifically address that. You didn't address jurisdiction, but we asked you to address it. Let me do that real quick. I still want you to answer Judge Bonetti's question, but since you've sort of interposed this question of jurisdiction, I don't want to forget about it. So maybe you should skip over this issue and finish answering Judge Bonetti's question and then go to the question of jurisdiction. I'm beyond my time, so I want to do whatever you want me to do. Well, you're not getting away until we say you can, so don't. You're nailed down. You're not going anywhere. Yeah. Under our case law, we can review if there's an issue with regard to the law and her availability of relief, not just the issue of whether or not there's abuse of discretion on the continuance. You go to see what she's asking a continuance for. Right. That's actually statutory. That's not just your case law. The REAL ID Act changed the statute to allow for questions of law. Why can't we review that? The question of a continuance is not one of those things. If you look at your own case law with respect to what is a matter of discretion and what is a matter of an issue of law or a constitutional claim, those things are distinct. This is a matter of pure discretion, unfettered discretion. This is a Heckler v. Cheney question as far as I'm concerned. I understand our case law. This has got to be statutory discretion. The word continuance doesn't appear in the statute. It is the position of the government, and the Eighth Circuit and the Tenth Circuit and the Seventh Circuit and the Sixth Circuit have all bought into this concept that the statute itself authorizing the immigration judge to conduct proceedings is absolutely unfettered discretion to control the timing of the hearings, including continuances. So continuances are clearly built into the authority of the immigration judge to conduct proceedings, just as it is for this Court. This is your jurisdictional argument? Yes. It didn't persuade Judge Posner and then Slimane, did it? It did, actually. Judge Posner found that it applied. Then he went on and said, but this is really some other sort of issue. And we're having a little trouble understanding what Judge Posner was trying to say about some other sort of issue. We would not have our – his analysis during oral argument was focused on – Judge Posner is pretty clear. I mean, you may not agree with him, but – His analysis during oral argument focused on due process matters. Doesn't our case law say the same thing? That a motion for continuance is a discretionary judgment and, therefore, reviewable? There is case law associated with continuances in this circuit. Did you read the case that we filed in our – did you get our order? Yes, absolutely. The case law that you cited, Medina-Morales, is a reopening case. It's not a continuance case. Reopening is actually in the statute, and the reasoning of Medina-Morales simply doesn't apply to this case. Because reopening is in the statute, specifically mentioned in the statute and not in discretionary terms, and because, as according to the court, the reopening provision was passed at the exact same time as the provision at S.242A2VII, which limited jurisdiction for discretion that was specifically given in the statute, the court found that in that situation it wasn't going to recognize it. A better analogy is probably going back to Spencer Enterprises, which is a much broader concept of whether or not the discretion is specific in the statute. My contention is that under Heckler v. Cheney's kind of analysis, once Congress says, Immigration Judge, it is your job to conduct a hearing, period, and we're not going to give you any guidance whatsoever on how to do it, that is the ultimate discretion, and there's no way around that. Congress was giving absolute discretion to the Immigration Judge to do it. So the Immigration Judge decides to flip a coin, that's okay, or says I wouldn't give you a continuance except you're from Mexico and not from Nicaragua. The only limitation. I always give Nicaraguans a continuance, but I never give Mexicans a continuance. That would be okay. Absolutely not. The only limitation on the authority of a judge to conduct proceedings is a due process concept of reasonableness, and that reads throughout the statute and it reads throughout the case law. The case law says that the only boundary, and in fact it shows up in this court's case law too, the only boundary is a due process concept of reasonableness. That would not pass that test. So if there was a due process issue, if you had a due process reasonableness issue here, then I would not be arguing that you didn't have jurisdiction. Let's say the case were to go back to the IJ. I know this is not what you're arguing. What would happen then? How long, what is her priority date? I don't know that, Your Honor. Her I-130 petition itself authorizes her to remain in the United States. So the question is how long it would be before she could get an approved adjustment of status. She can apply for adjustment of status now. I see. So why are we here? I mean she can stay in the United States based on her approved I-130? Did you say that? Not at this point. At this point it requires her to exit the United States and apply for readmission because she has a removal order against her. The only issue in this case is whether the immigration judge and the board in approving the disposition of the immigration judge was correct. This is not the case where she has moved to reopen her proceedings based on an approved I-130 or seeking to adjust her status. As far as I know, that has not taken place, and that issue is not before the court. It's a whole different set of facts. Well, it may be different, but we know she's got an I-130 that's been approved, so we know she's got a bona fide marriage to a U.S. citizen. What could possibly stand in the way of her granting her gains of petition grant? I don't quite understand. The agency's position. I also don't understand why our government is spending money to send you from Washington to fight so furiously. Your Honor, the answer is this is not a single case. This is a case of thousands and thousands. You don't even know what the question is because I haven't finished it. I mean, you keep sort of acting like you know what the question is going to be. What's the point of all this when we know this is not somebody who's sort of fraudulently married a U.S. person. This is somebody who eventually, if she does take down her departure and spends time in a country she hasn't seen since she was 16, maybe some years away from her family, from her husband and children, will get lawful, I mean is bound, is assured of getting lawful entry in the United States. What's the point of all this? It is not a guarantee. The reasoning behind it, Your Honor. If she hasn't approved I-30? No, if, for instance, she has a conviction out there, they don't consider those kinds of things in approving an I-130 petition. The only question is whether she is married and it's a bona fide petition. So the process that's in place and that the agency and Congress, frankly, expect aliens to do, the legislative history of ERIRA is very clear about that. They expect if you are required to leave the country, you leave the country when you're required to leave, and if you become eligible or are eligible to seek to reenter after that, you may seek to reenter. And in this circumstance, Ms. Martinez may leave the country to Mexico right now, walk into a United States consulate in Tijuana, and request to reenter the United States based on her approved I-130. And that request may or may not be approved based on the discretion of the agency, and at that point she may reenter the United States if it's approved. And at the point that she becomes eligible to adjust status, she could adjust her status, assuming that she meets all of the eligibility requirements to adjust status at that time. Well, we discussed this earlier about the whether or not 12, whether or not, maybe I'm confused, whether or not 245 applies, and you said it to me that now they do not have to leave. Only in the context of adjustment of status. Well, that's a catch-22. In the immigration hearing. I think we're talking about a catch-22. I don't quite understand this. I'm with Judge Kaczynski. I'm not too sure what this exercise is all about. It sounds like you're dragging this into an opinion on some stuff, continuance, discretion, jurisdiction. We're playing in the cracks on all of this. So even though you're saying that 1245 is not prohibited, she does not have to leave and come back in, you're saying she's going to have to leave and come back in. In the context of removal proceedings. Well, you want to run her through a reentry. I understand that. Right. And the purpose of that is to make sure that she's not, what, a criminal? There are many, many, many grounds of inadmissibility, and the agency is entitled to control the admission of aliens to the United States. So this is an opportunity for them to run the case. And that relates back to the fact that she came in illegally. No, it relates to the fact that she is an applicant for admission to the United States under an I-130 petition. That's because she came in illegally. Because if she didn't come in illegally, there wouldn't be this problem, right? She's trying to get her illegal status adjusted. No, at this time, at this time, having, she's out of proceedings now. She is required to leave, regardless of whether she entered legally or not. Removed because she came in illegally. If she had just overstayed a visa, it would be the same situation. She would now be required to leave and then petition for reentry based on an approved I-130 petition. That's just, that's the process, and it works for thousands and millions of people. And the requirements of Congress and the agency. Let's say she does go. How long does this process take? It depends on the, look, it goes to the local district director of the DHS where, that owns her case. Where is she resident? She's out of. California. No, she's out of Nevada. She's out of Las Vegas. She's not in Las Vegas. It would be a Las Vegas case, and I don't know how long it takes for the approval of a reentry in Nevada at this moment. Is there any reason that the government needs to press this case forward relentlessly rather than give her a chance to go through that process? I mean. She had the chance to go through that process, and she failed to voluntarily part when given that chance to do that. If she had aggressive counsel and had done all the proceedings and was ready to go, then it would have been an abuse of discretion not to grant her a continuance to go forward, right? I don't think it would have been an abuse of discretion to deny it. I can't tell you whether it would be an abuse of discretion to grant it, but I don't think it would have been an abuse of discretion to deny it, given the fact that her proceedings had extended over an extended period of time. So if we say, just for purpose of discussion, if we determine that it was an abuse of discretion to grant the continuance, then the process would go ahead whether it's one year, five years, or whatever, right? In other words, if, in fact, she gets a continuance, whatever that means, the length of time is not written anywhere. That's correct. No one's going to stop it. In other words, once it gets started, no one's going to stop it because, oh, it's taken a long time. It could end if she subsequently became ineligible to adjust status based on some other event. Exactly, but based upon the facts of this case now. That's correct, Your Honor. It would not end. There's nothing further. That's all I have to offer. Well, it just strikes me that this is a waste of resources and a waste of human life that our government can do better than this. Is there any way that this case could be mediated, that you could find some way of having her go through this process? I mean, the problem is if she goes out of the country, she has no way of getting back in until the petition is approved. No, Your Honor, that's not true. Her I-130 petition has been approved. She can, at any U.S. consulate outside the United States, petition DHS for permission to reenter based on her approved I-130 petition. And how long does that take, the process of coming back in the United States? I have heard it taking as long as two years. That was a Denver case, but I know it's taken days in other places, so I can't tell you. It depends on the pilot. I think it would take a lot less if government were to help. I mean, what is the point? I mean, fine, I can understand having to go out of the country, apply, but then having to wait two years, you know, with children, with a husband, with, you know, life. I mean, it just seems— The point is simple, Your Honor. Congress has passed a certain set of statutes, and they expect people to comply. That's right. And there's also the matter of trying to do right by the law. And, you know, you shouldn't really tempt us to do things that are unlawful by putting— I mean, this is how cases like Belsenande happen. And, you know, I came through the system. I found the INS to be a very humane agency, and people were highly competent, and, you know, I have a warm spot in my heart for them. But once in a while people do get caught in the middle in a way that, you know, may be right, strictly speaking, by the law, but isn't maybe the right thing for our government to do. Your Honor, the immigration system is full of cases with extraordinary equity. But this is the case we have before us. I understand. Is there any way you think you might be able to resolve this case without having to force this woman to leave her family for— I mean, I'm sure there's some way in which if you and— The chief counsel in question in this case was asked that question about this case and others. And the answer that they gave us is it would take them ten times longer to manage this kind of a case in this way than it would if she just went to Tijuana and filed a petition. But she'd be stuck there maybe for two years, as you say, and I think that's the kind of risk I can see. It could be. It could be, but if— But it wouldn't take— If we take that ten times on this case and force ten other people to wait in Tijuana. All the time you spend coming from Washington and coming here, if you spend some of that energy on this case. You know what I'd like you to do? I'd like you to go see Mr. Keisler. He and I are friends from way back. And just tell him this is the kind of case that I think the government should resolve humanely. He's a good guy. Yes, Your Honor. I knew him when he was a law clerk, and I've known him since. And I think this is the kind of case that, with the goodwill of our government, the generous government that we have, should be able to resolve without breaking up this family. So that's what I'd like you to do. I will pass that along, Your Honor. And you will speak to him personally and pass on my greetings. If he will speak to me personally, I will speak to him personally. Yes, Your Honor. You just tell him, just because I asked you to see him. Okay? Yes, Your Honor. And just tell him I know he can do it. I know he can do it. I have every confidence he can do it, and that if he puts his mind to it— I would point out that the Department of Justice no longer controls the immigration functions in the Department of Homeland Security. But Judge Chertoff is also a former Justice Department. Yes, a former judge. I'm sure this can be worked out. And it just strikes me as the kind of case that our government should, being a good and generous government, should be able to resolve without forcing this poor woman to go to— Now, is there something in the record that makes her ineligible? I don't know. I mean, that's fine. There's no talk about having her go, you know— I don't believe that's the case, Your Honor. But the risk of having to be stuck away from a family for as much as two years strikes me as unnecessary. And I realize that— This is simply a case of do we make an exception for this case as opposed to the hundreds of thousands of others at the expense of the hundreds of thousands of others, at the expense of the people who did it legally or not? The answer is yes, because you are here. Yes, sir. Because this is the case we have before us. We can't do much— That's right, Your Honor. —about all the injustices in the world, but we can do something about the one in front of us. And I think that that's how our government should approach things. I will pass that along, Your Honor. So we'll defer submission in this case for, let's say, three weeks. And I hope before that time expires that we get a motion of continuance and that perhaps something formal or informal can be worked out that will avoid us having to be tempted to cross any jurisdictional lines. Right, Your Honor. Thank you. If you would find the use of our mediation office of help, they are very good. They have mediated all sorts of cases, including immigration cases, and I highly recommend that their services be employed if— I have worked with the mediation office before. I'm sorry? I have worked with the mediation office. Well, I offer that as an option, and you might consider it. But first thing, go talk to Mr. Keisler and see what he can do about it. I will do that.  Thank you, Your Honor. Thank you. We'll defer submission in this case until—for three weeks. We are adjourned.
judges: Brunneti, Kozinski, Silverman